UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JOHN MICHAEL DUNN,<br><br>    Plaintiff,<br>v.<br><br>DREW M. CHRISTENSEN, et al.,<br><br>    Defendants. | Case No. 2:15-cv-01812-JCM-PAL<br><br>**ORDER**<br>**AND**<br>**REPORT OF FINDINGS AND**<br>**RECOMMENDATION**<br><br>(Mot. to Stay – ECF No. 27) |

This matter is before the court on a screening of Plaintiff John Michael Dunn's Second Amended Complaint (ECF No. 24) pursuant to 28 U.S.C. § 1915A. The undersigned submits the following report of findings and recommendation to the district judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice.

This matter is also before the court on Plaintiff John Michael Dunn's Motion to Stay (ECF No. 27). The motion is referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and LR IB 1-3 of the Local Rules of Practice.

## **BACKGROUND**

Mr. Dunn is a pro se detainee in custody at the Clark County Detention Center, and he has received permission to proceed *in forma pauperis* ("IFP") in this civil action. Order (ECF No. 2). This case arises from Dunn's allegations that defendants violated his Constitutional rights by executing unauthorized search warrants, fabricating evidence, neglecting to investigate his case, failing to provide effective assistance of counsel, and other misconduct in relation to a pending criminal prosecution in the Eighth Judicial District Court of the State of Nevada. *See State of Nevada v. John Dunn*, Case No. C-14-300445-1.[1]

---

[1] Judicial notice is properly taken of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue. *See, e.g.*, *Trigueros v. Adams*, 658

1

## I. PROCEDURAL HISTORY

Upon review of the Amended Complaint (ECF No. 11), the court issued a Screening Order (ECF No. 14) allowing Dunn to file a second amended complaint to correct defects in his pleading. In particular, the court found that the District Attorney's Office of Clark County is not proper a defendant in a § 1983 action. Mr. Dunn failed to state plausible claims against Carmine J. Colucci, since a criminal defense attorney is not a state actor, or against Patrick Burns, since a prosecutor is entitled to absolute immunity for his duties as an advocate. Additionally, he failed to allege a colorable municipal liability claim against the Las Vegas Metropolitan Police Department ("LVMPD") or an official capacity claim against Drew M. Christensen and Michael Fairweather. To the extent Mr. Dunn intended to allege claims against Christensen or Fairweather in their individual capacity for their own conduct, the court informed Dunn that the *Younger* abstention doctrine likely precluded this court's jurisdiction based on the pending state criminal proceeding. Jan. 27, 2017 Screening Order (ECF No. 14) at 8–9. However, the court gave him leave to amend and instructed him to advise the court whether the criminal case had been finally resolved, and how.

Dunn subsequently filed a Notice of Appeal (ECF No. 15) regarding the screening order on February 7, 2017. The Ninth Circuit dismissed his appeal for lack of jurisdiction. Mar. 20, 2017 Order (ECF No. 19).

## II. DUNN'S CURRENT FILINGS

### A. Second Amended Complaint (ECF No. 24)

Mr. Dunn filed a 44-page Second Amended Complaint on April 24, 2017, alleging violations of his First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights pursuant to 42 U.S.C. §§ 1983 and 1985. He names the following defendants: Clark County, LVMPD, Drew M. Christensen, Carmine J. Colucci, Michael Fairweather, and Patrick Burns. 2nd Am. Compl. (ECF No. 24) at 7. Christensen is the Director of the Clark County Office of Appointed Counsel. Colucci was Dunn's appointed counsel in the state criminal case. Fairweather

---

F.3d 983, 987 (9th Cir. 2011) (noting that a court may take judicial notice of the state court record). The court takes judicial notice of the docket in Dunn's criminal case, which shows that his case is currently set for jury trial on July 9, 2018.

is a detective employed by LVMPD. Burns is a deputy district attorney at the Clark County District Attorney's Office who prosecuted the state criminal case. Only Colucci is sued in his individual capacity; Christensen, Fairweather, and Burns are each sued in their official capacity. *Id*. Mr. Dunn seeks $100 million dollars in monetary damages, but not injunctive or declaratory relief. *See id*. at 6.

The allegations of the Second Amended Complaint repeat those in the previous pleadings. Dunn alleges that LVMPD was not judicially authorized to conduct electronic surveillance on his cell phone or track his movements with a GPS device to discover his residence. *Id*. at 4, 10, 13–14, 16–17, 22. Detective Fairweather allegedly forged judges' signatures and manufactured court orders, sealing orders, a GPS tracking warrant, and a residential search warrant. *Id*. at 4, 13, 19, 25. LVMPD detectives used a pen register trap and trace device to obtain location data from his cell phone without judicial approval. *Id*. at 19. These actions amounted to a warrantless search violating his Fourth Amendment rights. *Id*. at 4, 14–15, 20–23. LVMPD manufactured warrants and court orders to salvage the case. *Id*. at 24.

Dunn also alleges Prosecutor Burns obtained Dunn's indictment with tainted evidence and perjury. *Id*. at 5, 10, 13. Burns knew the evidence was tainted because it was derived from illegal surveillance and search. *Id*. at 23. The District Attorney's Office offered the counterfeit warrants and court orders into evidence to help cover up police wrongdoing. *Id*. at 24.

Dunn claims that to assist in the cover-up and guarantee conviction, Director Christensen appointed Colucci to his case. *Id*. at 5, 13, 24. Mr. Colucci was an ineffective defense lawyer with feeble skills and he failed to scrutinize Dunn's case, investigate the false search warrants and police misconduct, or file appropriate motions. *Id*. at 5, 10–11, 13, 25–26. Mr. Christensen "delegates attorneys to obtain convictions by depriving individuals of their 6th and 14th Amendment rights." *Id*. at 24. Dunn alleges that the Office of Appointed Counsel "offers a corrupt service" and Christensen, acting in his official capacity, allowed the unconstitutional practices and policies to continue. *Id*. at 24. Christensen and Colluci violated the Sixth and Fourteenth Amendments by denying Dunn effective assistance of counsel. *Id*. at 25.

Dunn alleges that the legal representation Colluci provided fell far below adequate

representation. *Id*. at 10. He asserts that the American Bar Association's standards for criminal justice provide that "counsel has a duty to explore all avenues leading to facts relevant to the merits of the case." *Id*. at 11. Counsel's performance in his case fell below the relevant standards. *Id*. at 11, 26 (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). The Office of Appointed Counsel conspired with LVMPD and the District Attorney's Office "to secure a conviction by denying the right to effective assistance of counsel by neglecting to obtain relevant discovery." *Id*. The District Attorney's Office, LVMPD, and the Office of Appointed Counsel deprived Dunn of his fundamental rights in a systemic pattern of corruption designed to obstruct the due process of law and abuse the legal process in order to obtain a conviction. *Id*. at 5. Clark County and LVMPD's constitutional violations were the result of a policy or custom. *Id*. at 32–33.

### B. Motion to Stay (ECF No. 27)

While the new pleading awaited screening, Mr. Dunn filed a Motion to Stay asking the court to hold this case in abeyance while his state criminal proceedings were pending. He asserts that a stay is appropriate because a dismissal would result in the loss of his claims. Mr. Dunn believes his § 1983 claim for warrantless search accrued on July 19, 2014, at the time of his arrest. Because he must wait to pursue his claims until the criminal proceeding has been finally resolved, he runs a risk that his claims may be time-barred.

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Screening an IFP Complaint

Federal district courts are required to screen IFP complaints before allowing the case to move forward and requiring a responsive pleading. 28 U.S.C. § 1915; *Jones v. Bock*, 549 U.S. 199, 213–14 (2007). The court must conduct a preliminary screening in any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). In its review, a court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted or seek monetary relief from a defendant who is immune from such relief. 42 U.S.C. § 1997e (Prison Litigation Reform Act of 1995 (the "PLRA")); 28 U.S.C. § 1915A(b). When a court dismisses a

complaint during screening, a plaintiff should be given leave to amend with directions to cure its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995); *see also Lopez v. Smith*, 203 F.3d 1122, 1127–29 (9th Cir. 2000) (en banc).

### B. Stating a Colorable Claim for Relief

Federal courts are required to dismiss an IFP action if the complaint fails to state a claim upon which relief may be granted, is legally "frivolous or malicious," or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2). In determining whether a complaint is frivolous and therefore warrants dismissal, a court is not bound to accept without question the truth of plaintiff's allegations. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). Allegations are frivolous when they are "clearly baseless," *id*., or lack an arguable "basis in law or fact." *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir. 2005). Frivolous claims include those based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest that clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Malicious claims are those "filed with the intention or desire to harm another." *King*, 398 F.3d at 1121; *Washington v. L.A. County Sheriff's Dep't*, 833 F.3d 1048, 1055 (9th Cir. 2016). The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915 and § 1915A is the same as the standard under Rule 12(b)(6) of the Federal Rules of Civil Procedure[2] for failure to state a claim. *See Washington*, 833 F.3d at 1055. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *North Star Intern. v. Ariz. Corp. Comm'n*, 720 F.2d 578, 580 (9th Cir. 1983); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (noting that the purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint).

A properly pled complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief" as well as the grounds for the court's jurisdiction and a demand for relief. Fed. R. Civ. P. 8(a). To avoid dismissal on a Rule 12(b)(6) review, a plaintiff must

---

[2] Any reference to a "Rule" or the "Rules" in this order refer to the Federal Rules of Civil Procedure.

5

allege enough facts to state a claim for relief that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when a plaintiff alleges factual content that allows the court to make a reasonable inference that a defendant is liable for the misconduct alleged. *Teixeira v. County of Alameda*, 873 F.3d 670, 678 (9th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This plausibility standard is not a " 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). Although Rule 8(a) does not require detailed factual allegations, it demands "more than labels and conclusions." *Id*. at 678. Merely reciting the elements of a cause of action and providing only conclusory allegations will not be enough to survive the court's review. *Id.* at 679–80. For the purpose of a Rule 12(b)(6) review, well-plead factual allegations are accepted as true, but vague allegations, unreasonable inferences, and legal conclusions are not entitled to the assumption of truth. *Teixeira*, 873 F.3d at 678 (citing *Iqbal*, 556 U.S. at 680; *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007)). A complaint should be dismissed where the claims have not crossed the line from conceivable to plausible. *Twombly*, 550 U.S. at 570.

Allegations in a pro se complaint are held to less stringent standards than formal pleading drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 n.7 (9th Cir. 2010). However, pro se litigants "should not be treated more favorably than parties with attorneys of record," *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986); rather, they must follow the same rules of procedure that govern other litigants. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995).

For the reasons discussed below, the court finds that the amended complaint fails to state a claim upon which relief can be granted.

II. **ANALYSIS**

    **A. The Second Amended Complaint Violates LSR 2-1 and Rule 8(a)'s Requirement for a Short and Plain Statement**

Mr. Dunn's Second Amended Complaint (ECF No. 24) was not submitted on the court's form complaint for civil rights actions, but is written on lined paper. The Local Rules of Practice

state that pro se civil rights complaints "must be submitted *on the form provided by this court.*" LSR 2-1 (emphasis added). The Second Amended Complaint violates this rule. The court has approved a nine-page form complaint to assist pro se plaintiffs in pleading civil rights violations. *See* Information & Instructions for Filing Civil Rights Complaint Pursuant to 42 U.S.C. § 1983 in the United States District Court, District of Nevada.³ If extra space is needed, the instructions state that up to two additional pages may be attached for a total of 11 pages. The court directed the Clerk of the Court to mail Mr. Dunn "one blank form complaint for § 1983 civil rights actions along with the instructions for completing the form, one copy of the Amended Complaint (ECF No. 11)," along with the copy of the Screening Order (ECF No. 14) discussing the deficiencies in his prior pleading. He did not use the form provided by the clerk's office. He did not seek leave of the court before filing the extended and unsanctioned document.

In addition, the 44-page Second Amended Complaint facially violates Rule 8(a)'s requirement of a "short and plain statement" of the court's jurisdiction and the plaintiff's claims. Rule 8(a) is violated when a complaint is needlessly long or very repetitive. *Cafasso v. Gen'l Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011); *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 640 (9th Cir. 1988) ("If the factual elements of a cause of action are scattered throughout the complaint but are not organized into a 'short and plain statement of the claim,' dismissal for failure to satisfy Rule 8(a) is proper.") (quoting Fed. R. Civ. P. 8(a)). Although Dunn's handwriting is legible, the Second Amended Complaint is highly repetitive, unorganized, full of legal conclusions and unnecessary case citations. More importantly it fails to address deficiencies outlined in the Screening Order (ECF No. 14). Dunn provides certain appropriate headings (such as jurisdiction, affidavit, defendants, and damages demanded), but others are repetitive (such as introductory – statement, statement of issues, nature of the case, background with applicable law, statement of the claim, summary of argument, memorandum of points and authorities with legal argument, and monetary damages). The allegations are not separated into counts, paragraphs, or by defendant or claims. Confusing and excessively long complaints

---
³ The civil rights complaint form and instructions are also available for download on the court's website at nvd.uscourts.gov/Forms.

"impose unfair burdens on litigants and judges." *See McHenry v. Renne*, 84 F.3d 1172, 1179–80 (9th Cir. 1996). The Ninth Circuit has held it is reasonable for a district court to conclude that a plaintiff "simply *cannot* state a claim" when he "knowingly and repeatedly refuses to conform his pleadings to the requirements of the Federal Rules." *Knapp v. Hogan*, 738 F.3d 1106, 1110 (9th Cir. 2013) (quoting *Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011)). Because Dunn has amended his pleadings three times but still has not provided a short and plain statement of his claims, dismissal under Rule 8(a) is proper. However, given his pro se status, the court will provide a basic explanation of why he fails to state an § 1983 actionable claim.

### B. Framework for Evaluating Dunn's § 1983 Claims

42 U.S.C. § 1983 provides a mechanism for the private enforcement of substantive rights conferred by the Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 is not itself a source of substantive rights, it merely provides a method for vindicating federal rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To state a claim under § 1983, a plaintiff must allege: (1) the violation of a right secured by the Constitution or laws of the United States; (2) by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48–49 (1988). The "threshold inquiry in a § 1983 suit" requires courts "to 'identify the specific constitutional right' at issue." *Manuel v. City of Joliet*, --- U.S. ----, 137 S. Ct. 911, 920 (2017) (citing *Albright* 510 U.S. at 271).

The jurisdictional statement of the Second Amended Complaint identifies violations of Dunn's First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendment rights. However, there are no specific allegations involving the First, Fifth, Eighth, or Thirteenth Amendments. Mr. Dunn alleges violations of his rights to assistance of counsel, freedom from unreasonable searches, and due process of law. These allegations generally implicate rights protected by the Fourth, Sixth, and Fourteenth Amendments. However, well-established precedent indicates that Fourth Amendment principles, rather than Fourteenth Amendment due process principles, govern pretrial deprivations of liberty. *See, e.g.*, *Manuel*, 137 S. Ct. at 917–19; *Albright*, 510 U.S. at 273–74 (noting that the Fourth Amendment, "not the more generalized notion of 'substantive due process,' must be the guide" for analyzing such claims); *Galbraith v. County*

8

*of Santa Clara*, 307 F.3d 1119, 1127 (9th Cir. 2002) (affirming dismissal of Fourteenth Amendment claim alleging false information in warrant affidavit). The court will therefore address Mr. Dunn's claims under the framework of the Fourth and Sixth Amendments.

After pinpointing the specific constitutional rights at issue, "courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Manuel*, 137 S. Ct. at 920 (citing *Carey v. Piphus*, 435 U.S. 247, 257–58 (1978)). "In defining the contours and prerequisites of a § 1983 claim, including its rule of accrual," the Supreme Court instructed courts to first look to the common law tort most analogous to the plaintiff's claim. *Id.*; *Bradford v. Scherschligt*, 803 F.3d 382, 387–88 (9th Cir. 2015) (citing *Wallace v. Kato*, 549 U.S. 384, 388–89 (2007)). "Sometimes, that review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort. But not always." *Manuel*, 137 S. Ct. at 920 (citing *Wallace*, 549 U.S. at 388–90; *Heck v. Humphrey*, 512 U.S. 477, 483–487 (1994)). "Common-law principles are meant to guide rather than to control the definition of § 1983 claims, serving 'more as a source of inspired examples than of prefabricated components'." *Id.* at 921 (quoting *Hartman v. Moore*, 547 U.S. 250, 258 (2006)). "In applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue." *Id.*

Federal law determines the date of accrual for a § 1983 claim, while state law determines the statute of limitations. *Wallace*, 549 U.S. at 388; *Bradford*, 803 F.3d at 386. Under traditional legal rules, a claim accrues when a plaintiff has a "complete and present cause of action, … that is, when the plaintiff can file suit and obtain relief." *Wallace*, 549 U.S. at 388 (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California*, 522 U.S. 192, 201 (1997)) (internal quotation marks omitted).

**C. Dunn's Fourth Amendment Claims Have Not Accrued**

The Fourth Amendment secures "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment protects "people, not places," and their reasonable and legitimate expectations of privacy. *Katz v. United States*, 389 U.S. 347, 350–51 (1967). "It is a basic

principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586 (1980).

Dunn's Fourth Amendment allegations are most analogous to the common law tort of malicious prosecution because he alleges, among other things, that the defendants did not actually have judicial authorization for warrants, they forged judges' signatures and manufactured court orders, and they offered counterfeit warrants and orders into evidence to help cover up police wrongdoing. Malicious prosecution seeks to remedy damages resulting when a prosecutor, police officer, investigator, or other government actor wrongfully initiates and/or pursues criminal prosecution. *See Wallace*, 549 U.S. at 389 (explaining the differences between false arrest, false imprisonment, and malicious prosecution, "which remedies detention accompanied, not by absence of legal process, but by *wrongful institution* of legal process"); *Heck*, 512 U.S. at 479 (analogizing § 1983 claim to malicious prosecution when the allegations included among other things, that defendants "engaged in an "unlawful, unreasonable, and arbitrary investigation" leading to his arrest and caused illegal procedures to be used at his trial); *LaMantia v. Redisi*, 118 Nev. 27, 30, 38 P.3d 877, 879–80 (2002) ("A malicious prosecution claim requires that the defendant initiated, procured the institution of, or actively participated in the continuation of a criminal proceeding against the plaintiff.") (citing Restatement (Second) of Torts § 653 cmts. c, f & § 655 (1977)).[4]

Dunn alleges that LVMPD lacked judicial authorization to conduct electronic surveillance or track his movements with a GPS device. Detective Fairweather forged judges' signatures and manufactured court orders, sealing orders, a tracking warrant, and a search warrant. LVMPD did this to salvage the criminal case against him. Prosecutor Burns allegedly obtained Dunn's indictment with tainted evidence and perjury. The District Attorney's Office offered the counterfeit warrants and court orders into evidence to help cover up police wrongdoing. Because

---

[4] A false imprisonment or false arrest claim arises out of a plaintiff's "detention *without legal process*," *i.e.*, without being "bound over by a magistrate or arraigned on charges." *Wallace*, 549 U.S. at 388–90; *Lacey v. Maricopa County*, 693 F.3d 896, 920 (9th Cir. 2012) (" 'If there is nothing more than the false arrest and the accused is released without any further proceeding'," the remedy is limited to damages for the false arrest.") (quoting Restatement (Second) of Torts § 653 (1977)). "False arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 389.

10

these allegations involve the pursuit of criminal charges via unconstitutional methods, the court finds they most resemble the common law tort of malicious prosecution and will identify the elements and applicable accrual date of such claim.

To state a colorable claim for malicious prosecution under Nevada law, a plaintiff must allege: (1) lack of probable cause to initiate a prior criminal proceeding; (2) malice; (3) the criminal proceeding ended in favor of the accused; and (4) damages." *LaMantia*, 118 Nev. at 30, 38 P.3d at 879; *see also Aziz v. Eldorado Resorts, LLC*, 72 F. Supp. 3d 1143, 1152 (D. Nev. 2014). To bring a malicious prosecution claim under § 1983, a plaintiff must allege the elements of a claim under state law plus one additional element—that the defendants prosecuted the plaintiff with the intent to deprive him of a constitutional right. *Lacey v. Maricopa County*, 693 F.3d 896, 919 (9th Cir. 2012) (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995)).

"One element that must be alleged and proved in a malicious prosecution action is termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 484; *see also Manuel*, 137 S. Ct. at 920–21. This favorable termination element "avoids parallel litigation over the issues of probable cause and guilt" and precludes the possibility of conflicting outcomes. *Heck*, 512 U.S. at 484. The Supreme Court has expressly recognized that a § 1983 claim for damages attributable to a Fourth Amendment violation is analogous to malicious prosecution and does not accrue until the criminal proceedings have terminated in the plaintiff's favor. *See Manuel*, 137 S. Ct. at 920–21; *Heck*, 512 U.S. at 489–90; *see also Bradford*, 803 F.3d at 388 (noting that "a malicious prosecution claim does not accrue until the proceedings against the plaintiff have terminated in such manner that they cannot be revived") (citation and internal quotation omitted).

Here, the Second Amended Complaint (ECF No. 24) does not allege that Mr. Dunn's criminal case has already ended in his favor. Thus, he has not pled the favorable termination element to support a plausible Fourth Amendment claim. Rather, he acknowledges that his criminal case is ongoing. The state court's docket confirms that his case is set for jury trial in July 2018. Dunn's affidavit states that a pending evidentiary hearing will expose the fraudulent warrants and the case will be dismissed after the hearing uncovers the misconduct. *Id*. at 2. It is clear that Dunn's Fourth Amendment claims have not accrued and he therefore lacks a "complete

and present cause of action" for which he can "file suit and obtain relief" in this court. *See Wallace*, 549 U.S. at 388. As such, the court will recommend dismissal of his Fourth Amendment claims against all defendants.

### D. Dunn's Sixth Amendment Claims Have Not Accrued

Under the Sixth Amendment, an accused in a criminal prosecution is entitled to a speedy trial, an impartial jury, knowledge of the accusations against him, the ability to call and confront witnesses, and to assistance of counsel in his defense. U.S. Const. amend. VI. As relevant to this case, the Sixth Amendment guarantees the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984).

The common law tort of legal malpractice is the most analogous to Dunn's Sixth Amendment claims. Legal malpractice "is premised upon an attorney-client relationship, a duty owed to the client by the attorney, breach of that duty, and the breach as proximate cause of the client's damages." *Hewitt v. Allen*, 118 Nev. 216, 220–21, 43 P.3d 345, 347 (2002) (citation omitted). Legal malpractice focuses on whether the attorneys adhered to the standard of care in their representation. *Mainor v. Nault*, 120 Nev. 750, 774, 101 P.3d 308, 324 (2004), *abrogated on other grounds by Delgado v. Am. Family Ins. Group*, 125 Nev. 564, 570, 217 P.3d 563, 567 (2009).

Dunn alleges that the Clark County Office of Appointed Counsel provides corrupt services, and Director Christensen, acting in his official capacity, assists LVMPD and the District Attorney's Office in covering up police misconduct and guaranteeing convictions. Christensen appointed Colucci to his criminal case for those purposes. Mr. Colucci was an ineffective defense lawyer with feeble skills and he failed to scrutinize Dunn's case, investigate the false search warrants and police misconduct, or file appropriate motions. Colluci's legal representation of Dunn fell far below adequate representation. Dunn alleges that the Office of Appointed Counsel conspired with LVMPD and the District Attorney's Office to secure his conviction by neglecting to obtain relevant discovery and denying his right to effective assistance of counsel. Dunn's allegations most resemble the common law tort of legal malpractice since he asserts that the attorneys' actions fell below the standard of professional care. Thus, the court will identify the elements and applicable accrual date of such claim, taking into account the particular

considerations for criminal defense representation.

To assert a claim for legal malpractice in Nevada, a plaintiff must allege: (1) an attorney-client relationship; (2) a duty owed to the client by the attorney to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity possess in exercising and performing the tasks which they undertake; (3) a breach of that duty; (4) the breach being the proximate cause of the client's damages; and (5) actual loss or damage resulting from the negligence. *Mainor*, 120 Nev. at 774, 101 P.3d at 324. To state a claim for ineffective assistance of counsel, a criminal defendant must allege that counsel's performance fell below the objective standard of reasonableness and, but for counsel's errors, *the result of the trial* would have been different. *Strickland v. Washington*, 466 U.S. 668, 688 (1984).

An action for legal malpractice or ineffective assistance of counsel does not accrue until the underlying proceeding or criminal case is resolved. In typical civil cases, where "there has been no final adjudication of the client's case in which the malpractice allegedly occurred, the element of injury or damage remains speculative and remote, thereby making premature the cause of action for professional negligence." *K.J.B., Inc. v. Drakulich*, 107 Nev. 367, 369, 811 P.2d 1305, 1306 (1991) (citation omitted). Damages accrue upon the resolution of the underlying legal action. *Hewitt v. Allen*, 118 Nev. 216, 221, 43 P.3d 345, 348 (2002). Likewise, a criminal defendant cannot state a claim of ineffective assistance of counsel until he has suffered prejudice (*i.e.*, damages), even though he reasonably believes counsel committed errors or omissions during the course of the proceedings. *Clark v. Robison*, 113 Nev. 949, 951, 944 P.2d 788, 790 (1997) (noting that a " 'no relief–no harm' approach" was specifically adopted because "proximate cause does not exist until post-conviction or appellate relief is granted") (quoting *Morgano v. Smith*, 110 Nev. 1025, 1029, 879 P.2d 735, 737 (1994)).

The Nevada Supreme Court has expressly held that criminal defendants' claims for attorney malpractice "do not accrue or become actionable until they are granted appellate or post-conviction relief." *Clark*, 113 Nev. at 951–52, 944 P.2d at 790 (citation omitted). Thus, a criminal defendant's "malpractice claim is not ripe until post-conviction or appellate relief is granted," and he must plead that he has obtained such relief to survive dismissal. *Id.*; *see also Day v. Zubel*, 112

Nev. 972, 978, 922 P.2d 536, 539 (1996) (concluding that a § 1983 claim based on a violation of the Sixth Amendment right to counsel accrued on the final termination of a criminal proceeding in the plaintiff's favor "because prior to that date it was impossible for [him] to file his claim for wrongful arrest, conviction, and incarceration because he was still subject to retrial and could have been re-convicted on the underlying sexual assault claim. Such a conviction would have eviscerated his civil rights claims."). The purpose of delayed accrual is to prevent litigation where the underlying damage is speculative or remote, since alleged damage may vanish with successful prosecution of an appeal and the attorney's conduct may ultimately be vindicated by an appellate court. *Semenza v. Nevada Med. Liability Ins. Co.*, 104 Nev. 666, 668, 765 P.2d 184, 186 (1988) (citation and internal alterations omitted).

In addition, Supreme Court precedent shows that an ineffective assistance of counsel claim must be raised in direct appeals, post-conviction, or habeas corpus proceedings—not a § 1983 action. Claims for ineffective assistance of counsel are not recognized under § 1983, despite the statute's "literal applicability" to the Sixth Amendment, because specific appellate and habeas statutes apply. *See Nelson v. Campbell*, 541 U.S. 637, 643 (2004). State prisoners must seek initially post-conviction relief in the state courts. *See Morgano*, 110 Nev. at 1031 n.3, 879 P.2d at 739 n.3 (where a claim is "based primarily on the ineffective assistance of counsel, post-conviction proceedings, rather than civil proceedings, provide such litigants a more appropriate forum to present their claims"). Nevada law states that a claim for ineffective assistance of counsel must first be raised on direct appeal of a conviction. *See* NRS 34.810(1)(b).[5] Nevada also provides habeas relief for ineffective assistance of counsel claims. *See* NRS 34.726(1). Where a state habeas remedy is available, a plaintiff cannot seek federal habeas relief until he has first sought and been denied habeas relief in state courts. *Preiser v. Rodriguez*, 411 U.S. 475, 477 (1973). State prisoners must exhaust their state habeas claims before seeking relief under federal habeas statutes. *See* 28 U.S.C. §§ 2241–66.[6]

---

[5] If such claim is not raised on direct appeal, it may be summarily dismissed when later raised in a habeas petition. *See Bejarano v. State*, 122 Nev. 1066, 1072, 146 P.3d 265, 269 (2006); NRS 34.810(2).

[6] Should any of these procedures reverse or invalidate a prisoner's conviction or sentence, bringing a final

14

Here, the Second Amended Complaint (ECF No. 24) does not allege that Mr. Dunn has been granted appellate, post-conviction, or habeas relief. Therefore, he has not pled the proximate cause element to demonstrate accrual of Sixth Amendment claims and no cause of action is available under § 1983. To the contrary, Dunn represents that his criminal case is ongoing. The state court docket states that his case will be tried in July 2018. It is clear that Sixth Amendment claims have not accrued, any alleged damages are currently speculative, and § 1983 is not the correct mechanism to vindicate his rights. Accordingly, the court will recommend dismissal of his Sixth Amendment claims against all defendants.

### E. The Motion to Stay

Mr. Dunn believes his § 1983 claims accrued on July 19, 2014, at the time of his arrest. He is incorrect. As explained, Mr. Dunn's Second Amended Complaint fails to state actionable Fourth and Sixth Amendment claims against any defendant because his claims have not accrued. Because his claims have yet to accrue, the statute of limitations has not started running. *See Manuel*, 137 S. Ct. at 920–21; *Heck*, 512 U.S. at 489–90; *Clark*, 113 Nev. at 952, 944 P.2d at 790. Thus, a dismissal without prejudice does not jeopardize any potential claims. The court therefore finds that a stay of this action is not appropriate and will deny his motion.

For the reasons explained,

**IT IS ORDERED** that Plaintiff John Dunn's Motion to Stay (ECF No. 27) is **DENIED**.

**IT IS RECOMMENDED** that Dunn's Second Amended Complaint (ECF No. 24) be **DISMISSED** without prejudice, and the Clerk of the Court be instructed to close this case.

Dated this 29th day of January, 2018.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

---

resolution to the criminal proceedings, a Sixth Amendment claim under § 1983 may then accrue. *Cf. Heck*, 512 U.S. at 486–90. In limited circumstances, after post-conviction relief is granted, a plaintiff may be able to state a plausible Sixth Amendment claim under § 1983 for an unconstitutional "policy of deliberate indifference to the requirement that every criminal defendant receive adequate representation, regardless of innocence or guilt." *See, e.g.*, *Miranda v. Clark County*, 319 F.3d 465, 466–71 (9th Cir. 2003) (en banc) (citing *City of Canton v. Harris*, 489 U.S. 378, 389 (1989)).

# NOTICE

This Report of Findings and Recommendation is submitted to the assigned district judge pursuant to 28 U.S.C. § 636(b)(1) and is not immediately appealable to the Court of Appeals for the Ninth Circuit. Any notice of appeal to the Ninth Circuit should not be filed until entry of the district court's judgment. *See* Fed. R. App. P. 4(a)(1). Pursuant to LR IB 3-2(a) of the Local Rules of Practice, any party wishing to object to a magistrate judge's findings and recommendations of shall file and serve *specific written objections*, together with points and authorities in support of those objections, within 14 days of the date of service. *See also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72. The document should be captioned "Objections to Magistrate Judge's Report of Findings and Recommendation," and it is subject to the page limitations found in LR 7-3(b). The parties are advised that failure to file objections within the specified time may result in the district court's acceptance of this Report of Findings and Recommendation without further review. *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). In addition, failure to file timely objections to any factual determinations by a magistrate judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation. *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991); Fed. R. Civ. P. 72.